UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT GLEN MYERS, | ) |
| Plaintiff, | ) |
| vs. | ) No. 4:25-cv-01212-CMS |
| BAILEYS' IN MIDTOWN, INC., For Profit Corporation d/b/a ROOSTER, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion for Entry of Final Default Judgment (Doc. 11) filed on November 17, 2025. The Court relies upon the entire record and the Declaration and Affidavit of Time and Costs submitted. Defendant, Baileys' In Midtown, Inc., For Profit Corporation, d/b/a Rooster ("Defendant"), failed to plead or otherwise defend against this action, resulting in a Clerk's Default being entered against Defendant pursuant to Rule 55(a) of the Federal Rules of Civil Procedure (Doc. 12). For the reasons stated below, Plaintiff's Motion is denied.

### I. BACKGROUND

According to Plaintiff's Complaint, Plaintiff is blind as a result of age-related macular degeneration. (Doc. 1 at 3). He is unable to use his computer without the assistance of auxiliary aids, including screen reader software. *Id.*

Plaintiff lives in Hamilton, Missouri, located in the northwest part of the state, hundreds of miles from St. Louis City, and well outside this District. (Doc. 1 at 3). Plaintiff claims that he is, and has been, a customer of Defendant and is interested in patronizing, and intends to patronize, Defendant's business in the near future. (Doc. 1 at 6). Defendant operates restaurants within St. Louis City and has its principal place of business at 3150 South Grand Boulevard in

1

St. Louis City. (Doc. 1 at 2).

Defendant also operates a website, which Plaintiff attempted to access on January 20, 2025; March 7, 2025; and June 23, 2025. (Doc. 1 at 7). Plaintiff alleges that he attempted to access the website to browse Defendant's offerings and online offers, with the intent to purchase through Defendant's website or from its principal place of business. *Id.* Plaintiff further alleges that during these attempts to visit Defendant's website, he experienced substantial barriers to access. *Id.*

The barriers to access identified by Plaintiff revolve around features of Defendant's website that are inaccessible to his screen reader software. (Doc. 1 at 14). For example, Defendant's website does not allow Plaintiff to expand menu items via his keyboard, which, when combined with incorrect assignment of roles to menu items in the menu bar, hinders Plaintiff's ability to navigate the website. (Doc. 1 at 21). These alleged barriers to access are tied to the Web Content Accessibility Guidelines ("WCAG"), a set of standards promulgated by the World Wide Web Consortium Web Accessibility Initiative. *See* (Doc. 1 at 19–24); *see also* 28 C.F.R. § 35.200. While Plaintiff does not allege that Defendant's website entirely lacks screen reader compatibility, he does allege that the barriers to access rendered Defendant's website inaccessible to him. (Doc. 1 at 18).

Plaintiff notified Defendant of these barriers through counsel, but Defendant had not corrected the website before Plaintiff's June 23, 2025, attempt to access the website. (Doc. 1 at 18–19). Plaintiff filed his Complaint against Defendant on August 12, 2025. (Doc. 1). He alleges that both Defendant's website and principal place of business are places of public accommodation, and that the barriers to access on Defendant's website injured him by denying him full access to, and enjoyment of, Defendant's website and principal place of business. (Doc. 1 at 11, 25).

2

Defendant was served with the summons and a copy of the Complaint on August 21, 2025. (Doc. 3). Defendant failed to file any responsive pleading to Plaintiff's Complaint within 21 days of service. As a result, the Clerk of this Court entered default against Defendant. (Doc. 12). Plaintiff moved this Court for entry of a Final Default Judgment against Defendant. (Doc. 11).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). At that stage, the court must determine whether to enter a default judgment in favor of the plaintiff. Fed. R. Civ. P. 55(b)(2); *see also Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). After default, "the factual allegations of a complaint (except those relating to the amount of damages) are taken as true, but 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Murray*, 595 F.3d at 871 (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2688 at 63 (3d ed.1998)). This Court will not enter a default judgment in favor of Plaintiff in this case.

## III.     DISCUSSION

*Plaintiff Has Not Stated a Claim under the ADA.*

To state a claim under the ADA, Plaintiff must allege: (1) he is an individual with a disability; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against the plaintiff within the meaning of the ADA. *Hillesheim v. Myron's Cards & Gifts, Inc.,* 897 F.3d 953, 956 (8th Cir. 2018). Title III of the ADA states, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment

of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Discrimination is then further defined most relevantly as "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden . . . ." 42 U.S.C. § 12182(b)(1)(A)(iii).

Here, Plaintiff has adequately alleged that he suffers from a qualified disability under the ADA. (Doc. 1 at 3). Plaintiff specifically alleges that he "is legally blind from age-related macular degeneration . . . ." *Id.* Under the ADA, a disability is "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A). Plaintiff's blindness substantially limits the major life activity of seeing. *See* 42 U.S.C. § 12102(2)(A) ("For purposes of paragraph (1), major life activities include . . . seeing . . . .").

Nevertheless, Plaintiff has not sufficiently alleged that Defendant discriminated against Plaintiff within the meaning of the ADA. Currently, there is no guidance from the Eighth Circuit as to whether a website is a "place of public accommodation" under the ADA. Therefore, the Court will interpret the plain language of the ADA to determine whether a website is a place of public accommodation.

This Court concludes a website is not a place of public accommodation, even accounting for the Supreme Court's instruction to interpret "places of public accommodation" liberally, *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676–77 (2001).[1] 42 U.S.C. § 12181 defines "public

---

[1] In *PGA Tour*, the Supreme Court's liberal construction meant merely that golf tours were public

4

accommodation." The definition lists "private entities [that] are considered public accommodations," including inns, restaurants, movie theaters, auditoriums, bakeries, and gymnasiums. *Id.*[2] Notably, the list does not include websites or anything resembling websites.

Additionally, although the Court must construe the list of public accommodations liberally, the terms of the list must be read in relation to one another. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195–96 (2012) (*noscitur a sociis*). In this vein, the Court notes that each private entity listed as a public accommodation is a physical location.[3] Thus, not only are websites not explicitly listed as public accommodations,

---

accommodations because their events occurred on "golf course[s]" specifically identified as "public accommodations" in Section 12181(7)(L). *PGA Tour, Inc.*, 532 U.S. at 677.

[2] The full list of public accommodations reads as follows:
> **(A)** an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
> **(B)** a restaurant, bar, or other establishment serving food or drink;
> **(C)** a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
> **(D)** an auditorium, convention center, lecture hall, or other place of public gathering;
> **(E)** a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
> **(F)** a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
> **(G)** a terminal, depot, or other station used for specified public transportation;
> **(H)** a museum, library, gallery, or other place of public display or collection;
> **(I)** a park, zoo, amusement park, or other place of recreation;
> **(J)** a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
> **(K)** a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
> **(L)** a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).

[3] The closest that the Eighth Circuit has come to commenting on this topic is its recent *per curiam* opinion affirming *Haller v. American Tower, Inc.*, 2025 WL 524178 (D. Minn. Feb. 18, 2025), *aff'd*, 2026 WL 249009 (8th Cir. Jan. 30, 2026) (per curiam). In *dicta*, the district court concluded that a

they are categorically different from every public accommodation listed.

The plain meaning of the term "place" also favors an interpretation of the ADA excluding websites as places of public accommodation. While the ADA defines "public accommodation," it does not define "place." Place is defined as "physical environment: SPACE." *Place*, *Webster's Third New International Dictionary* (2002).[4] Thus, for discrimination to occur at a "place of public accommodation" it must happen at a physical environment of a public accommodation (all of which are physical locations to begin with).

This same textualist approach was used by the Eleventh Circuit in *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266 (11th Cir. 2021), *vacated on reh'g*, 21 F.4th 775 (per curiam).[5] In its opinion, the court found that, although the website at issue was operated by a grocery store, which is included in the list of private entities considered public accommodations, the website itself was not a public accommodation. The court reasoned that the unambiguous language of the ADA lists "[n]o intangible places or spaces, such as websites . . . ." *Id.* at 1277. Thus, it held "that websites are not a place of public accommodation under Title III of the ADA." *Id.* This Court finds the Eleventh Circuit's reasoning persuasive.

Plaintiff appears to rely on what is called the "nexus" approach to determining what is a public accommodation. (Doc. 1 at 11) ("There is a physical nexus between Defendant's Website

---

radio tower and the radio waves it emits may not qualify as places of public accommodation because places of public accommodation "are traditionally physical, publicly accessible locations . . . ." *Id.* at *3 n. 2. The Eighth Circuit concluded "the dismissal was proper for the reasons stated by the district court." *Haller v. American Tower, Inc.*, No. 25-1570, 2026 WL 249009 (8th Cir. Jan. 30, 2026) (per curiam).

[4] While this is definition 1b in the cited edition of Webster's dictionary, definition 1a "a way for admission or transit" is unrelated to the context of the statute. *Place*, *Webster's Third New International Dictionary* (2002). Other definitions of "place" in Webster's dictionary also support its physical nature: "[1]c: physical surroundings: ATMOSPHERE"; "[2]b(1): a building or locality used for a special purpose." *Id.*

[5] Though the Eleventh Circuit's opinion was vacated on rehearing, the vacation was due to mootness. That means the Eleventh Circuit has not repudiated the substantive reasoning of the *Gil* opinion, even if it remains uncertain whether the court would come to the same conclusion now. *Gil*

6

and Defendant's Principal Place of Business . . . ."). This is a test used by the Third, Sixth, and Ninth Circuits to determine what constitutes a public accommodation under the ADA. *See Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612–13 (3d Cir. 1998); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1011 (6th Cir. 1997); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000). The nexus test acknowledges that the ADA deals with only physical spaces open to the public but allows for lawsuits against entities whose websites have "'some connection between the good or service complained of and an actual physical place.'" *Robles v. Domino's Pizza,* LLC, 913 F.3d 898, 905 (9th Cir. 2019), *cert. denied*, 589 U.S. 925 (quoting *Weyer*, 198 F.3d at 1114). Suffice it to say the nexus test is extra-textual and unpersuasive to this Court.

Beyond the nexus test, the First and Seventh Circuit Courts have adopted the position that a website can be a place of public accommodation regardless whether it is connected to a physical space like those listed in the ADA. *See Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994); *Doe v. Mut. Omaha Ins. Co.*, 179 F.3d 557, 558 (7th Cir. 1999). These cases are based on a view that the ADA's list of "public accommodations" is illustrative only. *See Carparts*, 37 F.3d at 19. They also ignore the interpretive canon of *noscitur a sociis*, whereby the general terms listed in Section 12181(7), all of which are physical spaces, are to be read in context. *See* Scalia & Garner, *supra*, at 195–96 (2012). The Seventh Circuit's decision in *Doe* seems to simply insert "website" into the definition of "public accommodations," though it does not appear in the statute. *See Doe*, 179 F.3d at 558 ("The core meaning of this provision, plainly enough, is that the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theater, Web site, or other facility . . . ."). This rationale, more so than the nexus test, contravenes the plain text of Section 12181(7), and

---

*v. Winn-Dixie Stores, Inc.*, 21 F.4th 775 (11th Cir. 2021) (per curiam).

therefore is unpersuasive.

Finally, it bears noting that the Government has at times interpreted the ADA to require accessible websites. The Department of Justice has promulgated this opinion in a series of rules and opinion letters. *See*, *e.g.*, Letter from Deval L. Patrick, Assistant Att'y Gen., to Senator Tom Harkin (Sept. 9, 1996) ("Covered entities that use the Internet for communications regarding their programs, goods, or services must be prepared to offer those communications through accessible means as well."). The Department of Justice issued a rule in 2017 mandating that the federal government comply with the Web Content Accessibility Guidelines ("WCAG"), which, as mentioned above, are promulgated by the World Wide Web Consortium Web Accessibility Initiative, not by Congress. *See* 36 C.F.R. § 1194.1, § 1194, App'x A (2018). The Department also passed a rule, effective in 2024, mandating that state and local governments follow the WCAG. 28 C.F.R. § 35.200 (2024). Importantly, the Department's position applies only to public entities and is not an interpretation of the ADA's definition of "public accommodations." *Id.* This Court has found no similar rule requiring private companies to have accessible websites. *See generally* 28 C.F.R. pt. 36 ("Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities"). Further, the Department's rule makes compliance with the WCAG "voluntary" and makes clear that noncompliance "does not necessarily indicate noncompliance with the ADA." *See* Letter of Assistant Atty. Gen. Stephen E. Boyd, to Representative Ted Budd (Sept. 25, 2018). For these reasons, the Department's position, even assuming it is enforceable, does not impact the outcome here.

The remaining question is whether having an inaccessible website denies participation "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations *of any place of public accommodation* . . . ." 42 U.S.C. § 12182(a) (emphasis added). Plaintiff asserts that the inaccessibility of Defendant's website creates an "intangible

barrier" to his equal enjoyment of the goods, services, etc., offered by Defendant. Plaintiff's assertion seems to draw on an Eleventh Circuit case stating that intangible barriers may violate the ADA. *See Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1283–84 (11th Cir. 2002). This Court's independent research has found no Eighth Circuit precedent discussing intangible barriers to access under the ADA. Even if this Court were persuaded by *Rendon*, that case dealt with a procedure that screened out disabled individuals attempting to appear on a television game show. *Id.* Screening out disabled individuals is a distinct type of discrimination under Section 12182(b)(2)(A) and is not at issue here.

At bottom, under Section 12182(a), "the goods, services, facilities, privileges, advantages, [and] accommodations" to which a plaintiff is denied access, must be *of* a place of public accommodation. As Plaintiff concedes, Defendant's website "mirror[s] the offerings available at Defendant's Principal Place of Business." (Doc. 1 at 5). Thus, there are no "goods, services, facilities, privileges, advantages, or accommodations" of the place of public accommodation, Defendant's restaurants, to which Plaintiff is prevented access by Defendant's website. Plaintiff does not allege that Defendant's physical locations themselves are inaccessible.

In sum, 42 U.S.C. § 12182 applies to a "place of public accommodation," which, according to the plain language, is a physical space, not a website. Plaintiff alleges violations of the ADA from only Defendant's website and, therefore, fails to allege violations of the ADA at all.

### IV.  DAMAGES

Because Plaintiff has not pleaded a violation of the ADA, the Court will not award Plaintiff injunctive relief. Plaintiff also demands attorneys' fees and costs associated with this matter. As Plaintiff is not entitled to the injunctive relief he demands, he is not a prevailing party and is not entitled to recovery of his reasonable attorneys' fees and costs associated with this matter. *See* 42

U.S.C. §12205.

Even if the Court had awarded Plaintiff a default judgment, Plaintiff still would not be entitled to attorneys' fees. "'In short,' the Supreme Court state[s], 'a plaintiff "prevails when actual relief *on the merits* of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."'" *Price v. Diab*, 761 F.Supp.3d 1279, 1287 (C.D. Cal. 2025) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)) (emphasis in original). The Supreme Court in *Farrar* also emphasized that "'a technical victory may be so insignificant … as to be insufficient to support prevailing party status.'" *Farrar*, 506 U.S. at 113 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1992)). In the recent case of *Lackey v. Stinnie*, 604 U.S. 192, 207 (2025) (quotation omitted), the Supreme Court reiterated that, in keeping with § 1988's requirement that a party must prevail to be awarded attorneys' fees, the Court has "only awarded attorney's fees where the plaintiff has received a judgment on the merits or obtained a court-ordered consent decree." The Eighth Circuit likewise has distinguished default judgments from judgments on the merits. *See Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015) (noting a "judicial preference for adjudication on the merits," as opposed to default judgments). For these reasons, this Court will not award Plaintiff attorneys' fees.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Default Final Judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint against Defendant is **DISMISSED**, and judgment is granted in favor of Defendant. *See Murray v. Lene*, 595 F.3d 868, 871, 873 (8th Cir. 2010). The Court will enter final judgment dismissing Plaintiff's Complaint and in favor of Defendant by separate order.

**IT IS FINALLY ORDERED** that Plaintiff's request for an award of attorneys' fees is **DENIED**.

This 9th day of February, 2026.

_____
CRISTIAN M. STEVENS
UNITED STATES DISTRICT COURT JUDGE